### State of Minnesota vs. James M. Wheeler.

#### August 4, 1880.

**Intoxicating Liquor—Exclusive Jurisdiction of Village.**—The charter of the village of Winnebago City exempts the village from the operation of the general law of the state regulating the sale of intoxicating liquors, and places that whole matter under the exclusive control of the common council of the village. No indictment under the general law will lie for selling such liquors within the village.

The defendant having been indicted in the district court for Faribault county, under Gen. St. 1878, c. 16, for selling spirituous and intoxicating liquor without license, demurred to the indictment. The demurrer was overruled by *Dickinson*, J., who, at defendant's request, certified the case to this court.

*Chas. M. Start,* Attorney General, for the State.

*A. C. Dunn,* for defendant.

GILFILLAN, C. J.     Sp. Laws 1874, *c.* 7, incorporated the village of Winnebago City.   The first subdivison of section 1, title 2, of the act authorizes the common council "to grant license, to regulate auctions and auctioneers, groceries, taverns, and all persons vending or dealing in spirituous, vinous or fermented liquors."   Section 6, title 3, provides: "The sale of intoxicating, spirituous, vinous, malt or fermented liquors, within the limits of said village, is hereby declared to be under the exclusive control of the common council of said village, and all fines imposed for violation of any ordinance regulating such traffic shall be paid into the treasury for the use thereof."   And section 19 of the same title: "All previous acts or amendments thereto, which in any way conflict with the provisions of this act, are hereby repealed."

The question in the case is, do these provisions of the charter withdraw the village from the operation of the general law of the state prohibiting the sale of liquor without license? The cases of *State* v. *Schmail,* 25 Minn. 370; *State* v. *Pfeifer,* 26 Minn. 175; and *State* v. *Fleckenstein,* 26 Minn. 177, are cited as bearing on the point; but the language of the charters under consideration in those cases was materially different from that of the charter in this case.   In neither of those cases did the charter place the sale of liquors under the exclusive control of the common council.   In each, the common council was designated as the body to issue the license, which, before the passage of the charter, was, under the general law, to be issued, if at all, by the board of county commissioners; but the prohibition in the general law against selling without license was left unaffected.   Here it is different.   The whole matter is placed under the exclusive control of the council.   It is for that body, and that body alone, to determine whether the sale of the liquors mentioned shall be entirely prohibited, or left entirely free, or permitted under license and regulation; and, if so, upon what terms and under

what regulations, and what shall be the punishment for violations. Exclusive control in the council, and the operation of the general law within the limits of the village, cannot co-exist. Exclusive control in the council necessarily shuts out any control by the general law. If the legislature meant what its language in section 6, title 3, imports—and we must hold that it did—it intended to exempt the village from the operation of any law of the state in respect to the sale of liquors. The demurrer to the indictment is well taken.

Order reversed.